IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville December 18, 2013

## RODERICK SAMMUAL CHADWICK v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3266    Monte Watkins, Judge**

**No. M2013-00778-CCA-R3-PC - Filed January 9, 2014**

Petitioner, Roderick Sammual Chadwick, was convicted by a jury of attempted voluntary manslaughter and aggravated assault, for which he received concurrent sentences of twelve years and fifteen years, respectively, as a Range III, career offender. Upon his guilty plea to another count in the indictment, being a felon in possession of a handgun, he received an additional six-year sentence to be served consecutively, for an effective sentence of twenty-one years. Following an unsuccessful direct appeal, petitioner filed the instant petition for post-conviction relief. The court denied relief after conducting an evidentiary hearing. This appeal follows, in which petitioner claims multiple instances of ineffective assistance at trial and on direct appeal. Upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and NORMA MCGEE OGLE, J., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Roderick Sammual Chadwick.

Robert E. Cooper, Jr., Attorney General and Reporter; Meredith DeVault, Senior Counsel; Victor S. Johnson, III, District Attorney General; and Roger Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

#### I. Facts and Procedural History

As a result of his involvement in a Davidson County shooting on May 5, 2007, a grand jury returned a three-count indictment against petitioner, charging him with attempted first degree murder, aggravated assault, and being a felon in possession of a handgun. *State v.*

*Roderick Sammual Chadwick*, No. M2008-02270-CCA-R3-CD, 2010 WL 2025463, at *1 (Tenn. Crim. App. May 21, 2010); *see* Tenn. Code Ann. §§ 39-12-101, -13-102, -13-202, -17-1307. Petitioner pleaded guilty to the handgun charge and proceeded to trial on the remaining two counts. *Roderick Sammual Chadwick*, 2010 WL 2025463, at *1. A jury found petitioner guilty of the lesser included offense of attempted voluntary manslaughter, a Class D felony, and aggravated assault, a Class C felony. *Id.*; *see* Tenn. Code Ann. §§ 39-12-101, -102, -211.

## A. Facts from Trial

On direct appeal, this court summarized the facts developed at trial as follows:

> This case arises from a May 5, 2007 argument [among] the Defendant, Ceneka Shaw and Charles Marshall, which occurred next to a club called Decades in downtown Nashville. The argument ultimately led to the Defendant['s] shooting Ceneka Shaw and pointing and shooting his weapon at Charles Marshall, although Marshall was not hit by a bullet. Nearby officers observed someone firing multiple shots in the parking lot next to Decades. They saw a blue vehicle leave the lot, and a pursuit ensued. The car was stopped, and the Defendant and the other two passengers were taken into custody. Following a "show-up" identification on the scene, Marshall identified the Defendant as the shooter. A photograph line-up was shown to Shaw at the hospital, and he likewise identified the Defendant. Additionally, a crane operator was climbing his crane when he heard gunshots and observed the ensuing police chase. The operator saw the person on the front passenger side of the vehicle throw something out the window. Officers later recovered a Glock 9mm pistol at the area the operator described; seven 9mm casings were recovered from the scene of the shooting.

*Roderick Sammual Chadwick*, 2010 WL 2025463, at *1.

## B. Procedural History

Following petitioner's unsuccessful direct appeal to this court, he did not request discretionary review with our supreme court. He timely filed the instant petition for post-conviction relief, and after appointment of counsel, he filed an amended petition. The court held an evidentiary hearing on February 13, 2013, nearly two years after the first petition was filed, and subsequently denied post-conviction relief. This appeal follows.

## C. Facts from Evidentiary Hearing

Petitioner testified on his own behalf. He stated that trial counsel had represented him for approximately one year prior to trial and that he did not "have too much interaction" with trial counsel until "almost . . . the time the trial started." Petitioner stated that trial counsel visited with him only "three or four times" prior to trial. Two of those meetings occurred at the jail, and the remainder took place on court dates. The majority of petitioner's meetings with trial counsel focused on trial preparation because he was not amenable to pleading guilty. He stated, "[T]he offers [the State] put on the table wasn't nothing [sic] I was willing to deal with."

Petitioner asserted that although trial counsel was aware that two other people were in the car with petitioner when he was arrested, trial counsel failed to call them as witnesses. Specifically, he faulted trial counsel for failing to call Sonny Barbary as a witness at trial. Petitioner believed that if called, Mr. Barbary would have refuted the evidence set forth by the State. The other witness, Corey Terrell, was characterized as a "body guard," and petitioner thought that Mr. Terrell lived out of state at the time of trial and could not be located. Petitioner also challenged trial counsel's failure to retain the services of a private investigator.

Petitioner stated that trial counsel continued to represent him on direct appeal from his convictions. He maintained that he did not receive a complete copy of the transcript from the trial. He stated that by not having a complete copy of the transcript, his appeal was impacted because the "appeals court couldn't rule unless they [had] the documents in their entirety."

In sum, petitioner testified:

> As far as [trial counsel] goes, to me[,] he was a good attorney. He fought good [sic] for me, . . . to the best I feel that he could . . . . [He] just made a few mistakes, as far as getting all my transcripts in to the Appeals Court. And, I mean, that's pretty much it. He done [sic] good on it, just the appeals thing.

On cross-examination, the State elicited from petitioner that although he was charged with attempted first degree murder, the jury convicted him of the lesser included offense of attempted voluntary manslaughter. Petitioner agreed that the verdict was a "really good result."

The State questioned petitioner with regard to his knowledge of the statements given by the two passengers in the car with him on the night of the offenses. Petitioner maintained that he did not know what effect the testimony of Mr. Barbary or Mr. Terrell would have had on the proceedings, even though they both told law enforcement officers that they were present but that they did not know what had happened. Petitioner explained that his position at trial was that the shooting was self-defense. He faulted trial counsel for not retaining a private investigator who could have gotten "all the facts together[] so that we could give a good case."

Petitioner presented the testimony of Sonny Barbary, his cousin by marriage, who confirmed that he was present on the night in question. He acknowledged that he witnessed all of the events but that he told police that he did not know what had happened.

Mr. Barbary explained that on the night of the shooting, he, Mr. Terrell, and petitioner were going "downtown." On the way, they stopped on the side of the road and asked someone if the club to which they were going was still open. He stated, "And for some odd reason[,] they just snapped and went off on us, started screaming and hollering." He opined that the individuals were "highly intoxicated with drugs[] because they [were] sweating," despite the fact that they were wearing tank tops. Mr. Barbary said that Mr. Terrell was a security guard and that he exited the vehicle first. Mr. Barbary, who was intoxicated and was asleep in the back seat, woke up and attempted to exit the vehicle, but he could not open the door because it had a child-proof lock engaged. Before he could roll down the window and manually open the door from the outside, everything had "escalated to a whole big misunderstanding." The two parties exchanged words, and one of the men standing outside "smacked" Mr. Barbary and Mr. Terrell. One of the other men pulled out a weapon. Shots were fired, and petitioner, Mr. Barbary, and Mr. Terrell ran for their vehicle.

Mr. Barbary said that as they drove away, one of the individuals pursued their vehicle on foot while holding "some guns." Petitioner jumped out of the car and began shooting at the other people "to get them off of [them]." He said that the police only saw petitioner shooting and that they did not see the other men with weapons. Mr. Barbary stated that no one interrogated the other men, and he thought that petitioner only shot at them because they began shooting first and petitioner was trying to defend himself. When interrogated, Mr. Barbary told the police that the other people were firing weapons at them, but he did not tell them that petitioner also fired a weapon because he knew that petitioner was a convicted felon and he did not want him to go back to jail. On cross-examination, Mr. Barbary admitted to a lengthy criminal history.

The State then presented trial counsel as a witness. He had begun his law practice at the District Attorney General's Office in Nashville, had practiced in the area of criminal

-4-

defense, and at the time of the evidentiary hearing, was employed as a Federal Public Defender in the Middle District of Tennessee. When he was appointed to represent petitioner on a separate criminal matter, the first action he took was requesting that petitioner remain out of custody on bond. The trial court granted the motion, but petitioner committed the offenses in the instant case while the other matter was pending. The instant case was not the first to arise in terms of sequence, but it was the first to proceed to trial. During the course of trial counsel's representation, petitioner was either out on bond or incarcerated locally, so trial counsel was able to meet with him as needed.

Trial counsel opined that he and petitioner "got along together pretty well." While petitioner was out on bond, trial counsel and petitioner visited the first crime scene and took photographs of the area. Following that time, they enjoyed a good working relationship.

Trial counsel reviewed petitioner's criminal history and characterized it as "bad." At one point, he wrote petitioner a letter informing him that he would be sentenced as a career offender because of his criminal record. In the letter, trial counsel advised petitioner that if he were convicted of attempted first degree murder, he would face a potential sentence of sixty years. Trial counsel also explained to petitioner the range of punishment for the other charges he faced.

Trial counsel recalled that the case involved five people: petitioner; Mr. Barbary; Mr. Terrell; Mr. Shaw, the victim of the attempted murder charge; and Mr. Marshall, the victim of the aggravated assault charge. Trial counsel believed that he "had a pretty good handle" on what had occurred and that he did not require the services of a forensic expert. He stated that after he interviewed petitioner and his companion, he immediately knew he could not present the companion as a witness because his version of the occurrence did not support a theory of self-defense. Instead, trial counsel focused on the relative height difference between Mr. Shaw and petitioner, emphasizing that as a former basketball player, Mr. Shaw would be "menacing" to a person of petitioner's stature. He also argued that based on the resting place of the bullets, Mr. Marshall was not an intended victim and that the shooting was reckless, but not intentional, in that regard. Trial counsel opined that he "raised what [he] believed was most viable and in [petitioner's] best interest at the jury trial." He thought it was a successful defense, based on the jury's returning a verdict of attempted voluntary manslaughter.

Trial counsel testified that he remained involved in petitioner's case and that he filed the motion for a new trial and the direct appeal brief. He stated that he thought that the trial had been "very clean"; "a lot of things with the witnesses went very well, the way [he] designed them to go[,] [a]nd [he] didn't see any big mistakes that would be sufficient for some type of reversal." On appeal, he raised sufficiency of the evidence as an issue but was

not surprised that the Court of Criminal Appeals affirmed the conviction. He also raised the issue of consecutive sentencing.

On cross-examination, trial counsel acknowledged that he spoke with one of petitioner's companions, but he could not remember his name. He did not interview the other person because he could not be located. Trial counsel said that although the person he interviewed was cooperative and willing to testify, he chose not to present him as a witness, based on the version of the events he presented. Trial counsel also admitted that an issue arose with the transcripts on appeal that precluded review of the issues he raised.

Upon this evidence, the post-conviction court denied relief. Petitioner filed a timely notice of appeal.

## II. Analysis

### A. Standard of Review

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). The post-conviction court's findings of fact are conclusive on appeal unless the preponderance of the evidence is otherwise. *Berry v. State*, 366 S.W.3d 160, 169 (Tenn. Crim. App. 2011) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App.1997)). However, conclusions of law receive no presumption of correctness on appeal. *Id.* (citing *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001)). As mixed questions of law and fact, this court's review of petitioner's ineffective assistance of counsel claims is de novo with no presumption of correctness. *Felts v. State*, 354 S.W.3d 266, 276 (Tenn. 2011) (citations omitted).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citing *Baxter v. Rose*, 523 S.W.2d 930 (Tenn. 1975)). When a petitioner claims that he received ineffective assistance of counsel, he must demonstrate both that his lawyer's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Finch v. State*, 226 S.W.3d 307, 315 (Tenn. 2007) (citation omitted). It follows that if this court holds that either prong is not met, we are not compelled to consider the other prong. *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004).

To prove that counsel's performance was deficient, petitioner must establish that his attorney's conduct fell below an objective standard of "'reasonableness under prevailing professional norms.'" *Finch*, 226 S.W.3d at 315 (quoting *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006)). As our supreme court held:

> "[T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence. . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations."

*Id.* at 315-16 (quoting *Baxter*, 523 S.W.2d at 934-35). On appellate review of trial counsel's performance, this court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To prove that petitioner suffered prejudice as a result of counsel's deficient performance, he "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn*, 202 S.W.3d at 116 (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). As such, petitioner must establish that his attorney's deficient performance was of such magnitude that he was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316 (citing *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999)).

B. Issues

1. Failure to Present a Witness at Trial/Failure to Obtain a Private Investigator

Petitioner argues that trial counsel should have called Mr. Barbary as a witness at trial. He further posits that had trial counsel hired a private investigator to assist in the preparation of petitioner's defense, the investigator would have deduced the import of Mr. Barbary's "significant, specific, and compelling testimony." The State counters that Mr. Barbary's testimony was problematic and could have harmed petitioner's case. We agree with the State.

At the evidentiary hearing, petitioner presented Mr. Barbary as a witness. Mr. Barbary relayed a version of the shootings that he had not previously disclosed to police officers. In fact, he admitted that he lied to law enforcement by telling them he was present but denying any knowledge of the shooting. Mr. Barbary's recollection of the events was that the victims became enraged for no reason, struck them, and then began to fire weapons toward them as he, petitioner, and Mr. Terrell fled in their vehicle. He further stated that petitioner returned fire as they were driving away because they were being pursued by one of the victims, who was holding a gun at the time. Mr. Terrell also admitted to a lengthy criminal history.

Trial counsel acknowledged that he spoke with one of petitioner's companions in preparing for trial but that he could not recall whether it was Mr. Barbary or Mr. Terrell. He stated that he elected not to present the companion as a witness because his version of the events did not support the theory of self-defense. Further, he described his trial strategy during the post-conviction hearing.

The post-conviction court omitted this issue from its written order. Tennessee Code Annotated section 40-30-111(b) mandates that "[u]pon the final disposition of every petition, the court shall enter a final order[ ] and . . . shall set forth in the order or a written memorandum of the case all grounds presented[ ] and shall state the findings of fact and conclusions of law with regard to each such ground." *See Sykes v. State*, 477 S.W.2d 254, 260 (Tenn. Crim. App. 1971) (noting the post-conviction court's failure to make findings of fact and conclusions of law in summarily denying relief and "reiterat[ing] and re-emphasiz[ing] . . . the importance and mandatory character of those statutory obligations"); *Brown v. State*, 445 S.W.2d 669, 671 (Tenn. Crim. App. 1969) (concluding that the general assembly's use of the word "shall" clearly indicated that the post-conviction court's duty to make findings of fact is mandatory). If a trial court does not make oral findings, it should include its findings of fact in an order. *Frank Robert Bigsby v. State*, No. M2002-02260-CCA-R3-PC, 2003 WL 22927139, at *2 (Tenn. Crim. App. Dec. 11, 2003) (citing *State v. Higgins*, 729 S.W.2d 288, 290-91 (Tenn. Crim. App. 1987)). It was error for the post-conviction court to omit making the required findings of fact.

While we emphasize that appellate review of post-conviction cases is "seriously frustrated[,] if not completely thwarted[,]" *Frank Robert Bigsby*, 2003 WL 22927139, at *2 (quotation omitted), by a court's failure to make the requisite findings, given the specific nature of the limited claim advanced on appeal in this particular case, the record is sufficient for us to review petitioner's claim of error. The sole question for our determination is whether trial counsel rendered ineffective assistance of counsel in failing to present Mr. Barbary as a witness. Our independent examination of the testimony at the evidentiary hearing and the record developed at trial are adequate to allow a full appellate review of petitioner's claim.

Our review of the record indicates that trial counsel, an experienced criminal defense attorney, formulated a trial strategy that involved the theory of self-defense based on the size differential between petitioner and one of the victims. Mr. Barbary's rendition of the facts indicated that he, petitioner, and Mr. Terrell had escaped immediate danger and were fleeing by vehicle. Although he claimed that one of the victims followed on foot, petitioner and his companions were in a superior position to effect their escape. Mr. Barbary offered no testimony that the victim was firing a weapon at them as they attempted to drive away; rather, he said that the victim was holding a weapon. Petitioner's actions in "jumping" from their vehicle and firing at the victim were inapposite to a theory of self-defense. Trial counsel appropriately adhered to the planned trial strategy and did so successfully, as evidenced by the jury verdict of a lesser included offense of attempted voluntary manslaughter. Petitioner is not entitled to relief.

Insofar as petitioner claims error in this regard relative to trial counsel's failure to procure the services of a private investigator, he presented no evidence that a private investigator would have assisted in the preparation of his defense *vis-a-vis* Mr. Barbary. The record refutes this claim, and petitioner is not entitled to relief.

### 2. Failure to Communicate Regularly with Petitioner

Petitioner claims that trial counsel met with him only "three or four times" prior to trial. Trial counsel testified that he was able to meet with petitioner as needed because petitioner was either released on bond or incarcerated locally during the time of trial preparation. In fact, trial counsel and petitioner visited a crime scene and photographed evidence. Trial counsel advised petitioner with regard to his range of punishment and potential sentence exposure.

The post-conviction court noted that trial counsel met with petitioner on several occasions. Petitioner has failed to demonstrate deficient performance or ensuing prejudice. Even if trial counsel had visited more often, "[b]ecause . . . petitioner has failed to

satisfactorily prove how this lack of communication might have affected the results of the trial, no relief can be granted on this basis." *Brimmer v. State*, 29 S.W.3d 497, 511 (Tenn. Crim. App. 1998). Petitioner is not entitled to relief on this claim of error.

### 3. Failure to Provide a Complete Record on Direct Appeal and Failure to Seek Discretionary Review by the Tennessee Supreme Court

The United States Supreme Court has recognized that due process of law requires that a convicted defendant receive effective assistance of counsel on the direct appeal from his conviction(s). *See Evitts v. Lucey*, 469 U.S. 387 (1985). We apply the same two-prong test of *Strickland* to determine whether appellate counsel was constitutionally effective. *Carpenter*, 126 S.W.3d at 886. As such,

> [i]f a claim of ineffective assistance of counsel is based on the failure to raise a particular issue, as it is in this case, then the reviewing court must determine the merits of the issue. Obviously, if an issue has no merit or is weak, then appellate counsel's performance will not be deficient if counsel fails to raise it. Likewise, unless the omitted issue has some merit, the petitioner suffers no prejudice from appellate counsel's failure to raise the issue on appeal. When an omitted issue is without merit, the petitioner cannot prevail on an ineffective assistance of counsel claim.

*Id.* at 887-88. Thus, to fully review petitioner's claim of ineffective assistance of appellate counsel, we must first determine the merits of the underlying issues, the sufficiency of the evidence and the propriety of consecutive sentencing.

However, our review of those issues is limited by post-conviction counsel's failure to include in the post-conviction record the transcripts that were missing on direct appeal. We note that the State moved to admit the record on direct appeal into evidence at the post-conviction hearing. However, there is no indication that post-conviction counsel ever supplemented the direct appeal record with the transcripts that were missing on direct appeal. Without said transcripts, we cannot review the sufficiency of the convicting evidence or the trial court's sentencing considerations, which we must do to reach a conclusion with regard to whether the failure to include the transcripts on direct appeal prejudiced petitioner. It is appellant's duty to prepare a record that conveys "a fair, accurate, and complete account of what transpired with respect to those issues" presented for review. Tenn. R. App. P. 24(b); *see State v. Griffis*, 964 S.W.2d 577, 596 (Tenn. Crim. App. 1997). We cannot surmise what the result would have been, nor may we presume prejudice from the lack of a complete record. Petitioner is not entitled to relief on this claim.

Insofar as he claims that trial counsel erred in failing to pursue discretionary review, we deny relief on this issue. Post-conviction counsel did not elicit testimony from trial counsel with regard to his reasons for not pursuing this avenue. Again, without the benefit of the aforementioned transcripts, we cannot discern what, if any, merit his claims may have had on direct appeal; thus, we are unable to presume prejudice by trial counsel's failure to appeal to our supreme court.

4. Failure to Properly Withdraw from Petitioner's Case

In a passing comment, petitioner states that trial counsel failed to properly withdraw from his case subsequent to the release of this court's opinion on direct appeal. He failed to elicit testimony from trial counsel on this issue, neglected to advance an argument, and omitted any citation to legal authority to persuade this court to find deficient performance or prejudice.

Each claim of error presented on appeal must include the following:

(A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues)[.]

Tenn. R. App. P. 27(a)(7)(A)-(B). Moreover, Rule 10(b) of the Rules of the Court of Criminal Appeals states, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this Court." Based on these premises, we deny petitioner relief.

**CONCLUSION**

Based upon our review of the record as a whole, the applicable legal authorities, and the briefs of the parties, we affirm the judgment of the post-conviction court.

_____
ROGER A. PAGE, JUDGE

-11-